UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Michael Fadel Abul & Manar Mohammed Hassan El Basha,

      Appellants

v.

Brian D. Shapiro, Chapter 7 Trustee,

      Appellee

Case No.: 2:24-cv-00953-JAD

**Order Reversing Bankruptcy Court's Ruling and Remanding for Further Proceedings**

      Debtors Michael Fadel Abul & Manar Mohammed Hassan El Basha appeal United States Bankruptcy Judge Natalie M. Cox's order sustaining Chapter 7 Trustee Brian D. Shapiro's objection to their invocation of Nevada's homestead exemption. The home that the debtors claimed the exemption on was purchased and held in the name of El Basha's wholly owned limited-liability company and not the debtors personally. Judge Cox had encountered a similar issue a few months earlier with different debtors represented by the same counsel, so she simply incorporated that ruling by reference and did not address the debtors' arguments directly. Because I find that factual differences and additional arguments that were made by Abul and El Basha but not addressed by the bankruptcy court may compel a different conclusion, I reverse and remand with instructions.

## Background

**A.    The debtors claimed a homestead exemption in their LLC-owned home.**

When the debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code in September 2023, they were living in a single-family residence at 2571 Hazelburn Avenue in

Henderson, Nevada.[1]  The home had been purchased[2] five months earlier by Dream Eye, LLC, a Wyoming limited-liability company, of which El Basha was the sole member, using funds from the sale of the debtors' prior home,[3] which was held in the name of a different LLC.[4]  El Basha recorded a declaration of homestead on the Hazelburn property just days after its purchase.[5]  The property was never held in the individual names of the debtors, but Abul declared that "the debtors continuously resided in the Hazelburn Property since closing on the purchase in April 2023, including through the petition date in September 2023" and paid all utilities and property taxes from their personal bank account.[6]  Abul further declared that this property, and the family's home before this one, were held in the names of LLCs or a trust "to maintain their privacy and security" and "to protect their home and eventually be able to pass their home down to their children, while also avoiding or minimizing estate and gift taxes."[7]  In their bankruptcy schedules, the debtors listed that they had an interest in the Hazelburn property, which they valued at $800,000, and they claimed it as exempt based on Nevada's homestead-exemption statutes.[8]  They also disclosed a 100% ownership interest in Dream Eye, LLC, along with ownership interests in several other LLCs.[9]

---

[1] ECF No. 9-1 at 3; ECF No. 9-7 at 6, ¶ 23.
[2] ECF No. 9-7 at 156 (Hazelburn deed).
[3] ECF No. 9-11 at 4, ¶ 6.
[4] ECF No. 9-7 at 136 (Dream Eye, LLC organizational documents).
[5] *Id*. at 161.
[6] *Id*. at 6, ¶ 23.
[7] *Id*. at 6–7, ¶ 24.
[8] ECF No. 9-3 at 12 (Schedule C).
[9] *Id*. at 8, 32.

**B. The bankruptcy court sustained the trustee's objection to the homestead exemption because the home was owned exclusively by an LLC.**

The Chapter 7 trustee objected to the homestead-exemption claim, pointing out that the Hazelburn property was held not by the debtors but by Dream Eye, LLC.[10] The debtors argued primarily that:

- They should be permitted to claim the homestead exemption in the Hazelburn property although it was held in the name of the LLC because El Basha's 100% interest in the LLC meant that she (and thus the bankruptcy estate) would be entitled to the distribution of the proceeds of the eventual sale of the property by the LLC under sections 541(a)(1), (2) & (6) of the Bankruptcy Code[11];

- Alternatively, they should be permitted to claim the exemption because "the Hazelburn Property is a property that the bankruptcy estate acquired after commencement of the case" under section 541(a)(7) when the trustee "exert[ed] control over" the LLC[12]; and

- Additionally, this case is similar to *In re Caldwell*, in which the United States Bankruptcy Appellate Panel of the Ninth Circuit (BAP) "engaged in a thorough discussion of relevant Nevada homestead-exemption statutes and caselaw to hold that a debtor holding an interest in a property indirectly via an LLC was sufficient to retain an interest in that property sufficient to claim a homestead exemption therein."[13]

---

[10] ECF No. 9-4.

[11] ECF No. 9-6 at 22.

[12] *Id*.

[13] *Id*. at 24 (cleaned up).

After supplemented briefing and two hearings,[14] Judge Cox sustained the trustee's objection.[15] She found that the case had "substantial overlap with" the Chapter 7 case of Robin and Donya Lehner, in which a creditor objected to the debtors' homestead-exemption claim because the home was held in the name of an LLC.[16] The entirety of the oral ruling was this:

> As the parties discussed in the papers and during oral argument, the current case has substantial overlap with this Court's January 9th, 2024, oral ruling in the Chapter 7 case of Robin Lehner.
>
> Like the Lehner case, debtors claim a homestead exemption in real property titled in the name of a nondebtor LLC. Although there may be slight variations of fact between the Lehner case and the current case, the legal analysis and conclusion remains the same. Therefore, for the reasons stated in the Chapter 7 trustee's homestead objection and related papers and based on the Court's prior legal analysis in Lehner, which is fully incorporated herein by reference, the Court sustains the trustee's objections.[17]

Several months later, the trustee sold the Hazelburn property to an unrelated third party, holding back the amount of the exemption due to the pendency of this appeal.[18] The sale was authorized by the bankruptcy court.[19] The opening line of the trustee's motion seeking approval of that sale states that the trustee "hereby moves this Court for entry of an order approving the sale of the bankruptcy estate's interest in certain residential real estate . . . ."[20]

---

[14] ECF Nos. 9-10, 9-13 (transcripts of hearings).

[15] ECF Nos. 9-16, 9-17 (*In re Lehner* transcript and order).

[16] ECF No. 9-13 at 4; *see also In re Lehner*, 2:24-cv-00453-JAD.

[17] ECF No. 9-13 at 4 (transcript of 5/14/24 oral ruling).

[18] ECF No. 15. The parties ask this court to take judicial notice of the events following the ruling, *see* ECF Nos. 14, 15, and I grant those requests.

[19] ECF No. 14-8 (Order Approving Motion to Sell Real Property).

[20] ECF No. 14-7 at 2.

C.	**The debtors appeal.**

The debtors appeal the bankruptcy court's ruling on the exemption, and their appeal is fully briefed.[21] Their arguments can be generally organized under two main points: (1) the bankruptcy court's ruling ignores the bulk of their arguments because those points were not raised in *Lehner*; and (2) the bankruptcy judge erroneously read into Nevada's homestead exemption a requirement that the debtor must own title to property in his own name in order to claim it as exempt.

## Discussion

A.	**This court applies a de novo standard of review.**

The question raised by this appeal is whether the bankruptcy court erred in sustaining the trustee's objection to the debtors' use of the homestead exemption. The debtors argue, and the trustee does not dispute, that a de novo standard of review applies.[22] The Bankruptcy Appellate Panel of the Ninth Circuit has held that a "bankruptcy court's application of state exemption law is a question of statutory construction that is reviewed de novo,"[23] and a de novo standard is also applied when evaluating whether property is part of a bankruptcy estate.[24] So I find that de novo review is the appropriate standard for resolving this appeal, and I thus review this matter without deference to the bankruptcy court's decision.

---

[21] ECF Nos. 8 (opening brief), 10 (answering brief), 12 (reply brief).
[22] ECF No. 8 at 11.
[23] *In re Anderson*, 613 B.R. 279, 281 (B.A.P. 9th Cir. 2020).
[24] *Id.*

**B.   This court reverses the bankruptcy court's order sustaining the trustee's objection and remands for the bankruptcy court to consider the issues and arguments that distinguish this case from *In re Lehner*.**

This case and *In re Lehner* had much in common. Both presented the overarching question of whether a debtor could claim a homestead exemption in property purchased and held by a wholly owned limited-liability company. The same counsel represented all of the debtors. And both sets of debtors relied primarily on the non-binding decision in *In re Caldwell*, in which the panel allowed a debtor to claim the exemption for a home that he transferred into an LLC and then into a revocable trust.[25]

But this case has material differences from *In re Lehner*. The Hazelburn property was purchased with cash rolled over from the sale of Abul and El Basha's prior home—a home that was also held in an LLC—while the Lehners' home was mortgaged. The Lehners stated under penalty of perjury in their bankruptcy schedules that they had no legal or equitable interest in their home, and the record was devoid of evidence that they had made any contribution to the equity in the home or acted as householders, or why the property was held in this way.[26] Abul and El Basha, on the other hand, listed the Hazelburn property in their filing; Abul's robust declarations in support of the debtors' briefing in this case detailed the use of the property, the source of its purchase funds, and the reasons for holding it in the LLC; and they provided the organizational documents to the court for reference and review.[27] Dream Eye, LLC is a Wyoming limited-liability company, not a Delaware one like in *In re Lehner*. And the Lehners' Chapter 7 trustee had filed—but withdrawn—a motion seeking to substantively consolidate the

---

[25] *In re Caldwell*, 545 B.R. 605, 612 (B.A.P. 9th Cir. 2016).

[26] *See* ECF No. 19 in *In re Lehner*, 2:24-cv-00453-JAD, at 6–8 (Order Affirming Bankruptcy Court's Ruling).

[27] *See generally* ECF No. 9-16.

LLC's assets into the debtors' estate.[28] The debtors in this case also presented substantial argument below that the Chapter 7 trustee's ability to sell the Hazelburn property makes it the property of the bankruptcy estate under §§ 541(a)(1), (2), (6), and (7) of the Bankruptcy Code—arguments that the Lehners did not make in their case.[29]

### 1. The factual differences between this case and <u>In re Lehner</u> necessitated an individualized analysis.

These distinctions matter because the *In re Lehner* ruling was heavily fact based. The bankruptcy judge relied on the Lehners' admissions in their schedules that they had no "legal or equitable interest in" their residence and that it was owned by an LLC to distinguish their case from *In re Caldwell*:

> *In re Caldwell*, however, is distinguishable because it was undisputed therein that the real property constituted property of the estate, whereas here, debtors concede in their Schedule A/B as amended that they do not have any legal or equitable interest in the Balatta Canyon Court property.[30]
> 
> . . .
> 
> Unlike *In re Caldwell*, debtors do not claim that they have ever had any legal or equitable ownership in the Balatta Canyon Court property.[31]

The judge also highlighted the trustee's withdrawal of his motion for consolidation:

> [The Lehners'] current request essentially asked this Court to treat Westridge Property Management LLC's sole asset as being substantively consolidated with its own estate, despite the trustee's withdrawal of the very motion that asked the Court for that same thing.[32]

---

[28] That motion was ultimately withdrawn, however. *Id*. at 7.

[29] *See generally* ECF No. 9-6; ECF No. 9-10 at 4 ("We did brief some additional items in this brief that were not briefed in the Lehner case.").

[30] ECF No. 9-16 at 8–9 (*In re Lehner* oral ruling).

[31] *Id*. at 13.

[32] *Id*. at 14.

7

The *In re Lehner* ruling applied Nevada and Delaware limited-liability law.[33] And finally, the judge commented on the paucity of authority for the Lehners' arguments:

> The debtors' request . . . is frankly bereft of legal authority and instead attempts to argue that equity dictates a finding that debtors have an interest they may exempt, despite the fact that, one, they admit it has always been titled in Westridge Property management LLC's name; two, they admit in their Schedule A/B, which they signed under penalty of perjury, that they have no legal or equitable ownership interest in the Balatta Canyon Court property; and three, the Chapter 7 Trustee's motion, which asked for a substantive consolidation of the LLC's sole asset with the debtors' estate, has been withdrawn.[34]

At a minimum, these differences necessitated a fulsome analysis of how the facts of this case fare under *In re Caldwell*.[35] The debtors contend that *In re Caldwell* stands for the proposition that "a debtor's holding title to a property indirectly in an LLC [i]s a sufficient enough interest . . . to claim a homestead exemption [under] Nevada law."[36] The Caldwells argued that the transfers of title in and out of their LLC were not true ownership changes because they "always retained a beneficial and equitable interest in the property. . . ."[37] Mr. Caldwell testified that the transfers were made for estate-planning purposes only and on advice of counsel and financial advisors.[38] He presented evidence that they "continuously resided in the" home for

---

[33] *Id*. at 9–11.

[34] *Id*.

[35] This assumes without deciding that *In re Caldwell* was correctly decided. The bankruptcy judge did not reject it; she distinguished it. On remand, the bankruptcy judge is of course free to decide what impact, if any, this non-binding decision should have on this case.

[36] ECF No. 8 at 56.

[37] *In re Caldwell*, 545 B.R. at 607.

[38] *Id*. at 608.

more than 20 years and had "paid the mortgage, taxes, and insurance."[39]  The panel noted that "Nevada law does not distinguish between the types of interests in property that qualify for the homestead exemption" and surmised that it "cannot be limited to only fee simple title."[40]  It then concluded that the interest that the Caldwells enjoyed was significant enough to qualify for the exemption.[41]  The panel reasoned that Congress could not have intended to limit "a debtor's homestead exemption where, as here, (1) debtor purchased the property in 1994, well before the start of the 1,215-day period, (2) continuously possessed and occupied the property as his homestead, and (3) accumulated the 'equity' by making regular mortgage payments throughout his occupancy."[42]

The *In re Lehner* record lacked these elements.[43]  The Lehners never owned their property; it was purchased by the LLC less than 1,215 days before their bankruptcy filing.  There was no evidence in the record that they continuously possessed or occupied the property as a homestead or that they accumulated equity by making the mortgage payments.  The only explanation for holding title in an LLC was attorney argument, not evidence.  And the Lehners' schedules expressly disclaimed any ownership interest in the home.

But the Abul–El Basha record addressed these elements in an apparent effort to bring this case in line with *In re Caldwell*.  The two declarations from Abul recounted the history of the family's homestead declaration and the source of the Hazelburn property's equity, and they

---

[39] *Id*. at 610.

[40] *Id*. at 611–12.

[41] *Id*. at 612.

[42] *Id*. (cleaned up).

[43] *See* ECF No. 19 in *In re Lehner*, 2:24-cv-00453-JAD, at 6–8 (Order Affirming Bankruptcy Court's Ruling).

9

detailed the family's possession and occupation of the property.[44] So the factual foundation for the bankruptcy court's decision in *In re Lehner*—that they "admit[ed] in their Schedule A/B, which they signed under penalty of perjury, that they have no legal or equitable ownership interest in the . . . property" and the withdrawal of the Chapter 7 trustee's motion for substantive consolidation of the LLC's sole asset with the debtors' estate[45]—wasn't present in Abul and El Basha's case. I thus cannot find that the trustee-objector met its burden to rebut the debtors' claim of exemption because the evidence specific to this case was not evaluated.[46]

### 2. *The debtors' additional legal arguments should be considered by the bankruptcy court in the first instance.*

A second reason that this case was materially different from *In re Lehner* is that Abul and El Basha made arguments that the Lehners didn't. As the bankruptcy judge summarized when describing the *In re Lehner* briefing:

> Debtors' current request essentially asked this Court to treat Westridge Property Management LLC's sole asset as being substantively consolidated with its own estate, despite the trustee's withdrawal of the very motion that asked the Court for the same thing. **The debtors' request . . . is frankly bereft of legal authority** . . . .[47]

But Abul and El Basha did more with their briefing. They cited the Ninth Circuit's decision in *In re Ryerson* for the proposition that, in enacting 11 U.S.C. § 541(a), Congress intended to include within the bankruptcy estate "all legally recognizable interests although they

---

[44] *See* ECF Nos. 9-7, 9-11.
[45] ECF No. 9-16 at 9–11.
[46] *See In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (summarizing the burdens).
[47] ECF No. 9-16 at 14 (emphasis added).

10

may be contingent and not subject to possession until some future time."[48] And they argued *inter alia* that the home was the property of the estate under §§ 541(a)(6) & (7) and thus subject to the exemption because the trustee took control over this asset directly.[49] The developments after the bankruptcy court sustained the trustee's objection to the homestead exemption claim bore that out. The trustee moved for and was granted permission to sell the home.[50] In his motion to confirm that the automatic stay did not apply to an eviction of the debtors, the trustee explained that "[t]he LLC membership is now property of the bankruptcy estate, and the Trustee controls the LLC. In order to liquidate the LLC, the Trustee intends to sell the house."[51]

Because the bankruptcy court simply applied the *In re Lehner* ruling to the trustee's objection to Abul and El Basha's claim without giving it a custom fit, these § 541(a) arguments were not considered. As they may have impacted the outcome, particularly in light of the significant factual differences between this case and *In re Lehner*, the bankruptcy court should be given the opportunity to address them in the first instance.

## Conclusion

IT IS THEREFORE ORDERED that the bankruptcy court's order sustaining the trustee's objection to the homestead exemption of Michael Fadel Abul and Manar Mohammed Hassan El Basha is **REVERSED and VACATED,** and the matter of this objection is **REMANDED back to the bankruptcy court**, Case No. 23-14076-nmc, for a redetermination that specifically addresses (1) the impact of the facts of this case that distinguish it from *In re Lehner*; and (2) the debtors' § 541(a) arguments. Whether additional briefing or oral argument is warranted, or what

---

[48] ECF No. 9-6 at 9.
[49] *Id*. at 10–12.
[50] ECF No. 14-8.
[51] ECF No. 14-2 at 4, ¶ 2.

additional issues should be addressed in the ruling, are left to the discretion of the bankruptcy court.

The Clerk of Court is directed to **ENTER JUDGMENT** for the Appellants/Debtors **Michael Fadel Abul and Manar Mohammed Hassan El Basha and CLOSE THIS CASE.**

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　U.S. District Judge Jennifer A. Dorsey
　　　　　　　　　　　　　　　　　　　　　　　　　October 3, 2025